OPINION *Page 2 
{¶ 1} On May 27, 2008, appellant, Marshall King, was charged with one count of domestic violence in violation of R.C. 2919.25 and one count of resisting arrest in violation of R.C. 2921.33. Said charges arose from an incident between appellant and his live-in girlfriend, Nicosia Bibart.
 {¶ 2} Prior to trial, the resisting arrest charge was dismissed. A bench trial commenced on June 17, 2008. By journal entry filed same date, the trial court found appellant guilty, and sentenced him to one hundred eighty days in jail.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT COMMITTED HARMFUL ERROR WHEN IT DID NOT RULE UPON THE APPELLANT'S CRIMINAL RULE 29 MOTION TO DISMISS PRESENTED AT THE CLOSE OF THE STATE'S CASE."
 II {¶ 5} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 6} Appellant claims the trial court erred in not ruling on his Crim. R. 29 "motion to dismiss" presented at the close of the state's case. We disagree.
 {¶ 7} Crim. R. 29 governs motion for acquittal. Subsection (A) states the following: *Page 3 
 {¶ 8} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 9} However, appellant's case was tried to the bench, not a jury:
 {¶ 10} "`The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim. R. 29 motion at the close of all the evidence. See the following cases decided under the analogous Fed.R.Crim.P. 29: Hall v. United States (C.A.5, 1961),286 F.2d 676, 677, certiorari denied, 366 U.S. 910, 81 S.Ct. 1087,6 L.Ed.2d 236; United States v. Besase (C.A.6, 1967), 373 F.2d 120, 121;United States v. Pitts (C.A.5, 1970), 428 F.2d 534, 535, certiorari denied, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149. See also, 8A Moore's Federal Practice, Paragraphs 29.01 Et seq.' Dayton v. Rogers (1979), 60 Ohio St.2d 162, 163, 398 N.E.2d 781, overruled on other grounds,State v. Lassaro (1996), 76 Ohio St.3d 261, 266, 667 N.E.2d 384. The rule has no application in a case tried to the court. Id." State v.Massie, Guernsey App. No. 05CA000027, 2006-Ohio-1515, ¶ 23.
 {¶ 11} Appellant represented himself at trial. Appellant argues the trial court did not rule on his "motion to dismiss": *Page 4 
 {¶ 12} "MR. KING: Well if you would like to. . . I motion that you dismiss.
 {¶ 13} "THE COURT: No you are calling your witness and we are having a trial but I am not going to tolerate this constant asking and starting and re-asking a question. Get to the point and ask it and then let them answer it o.k.?
 {¶ 14} "MR. KING: Yes sir." T. at 65.
 {¶ 15} The trial court responded with a "No." Even if the "no" was not in reference to a ruling on the motion, silence by the trial court was in fact a denial of the motion, as the trial court instructed appellant to proceed. Id.
 {¶ 16} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A) which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant argues the evidence was insufficient to support a conviction because the trial court could not rely on the unsworn statements of the victim, Nicosia Bibart.
 {¶ 17} Ms. Bibart testified she called the police to make appellant leave their residence. T. at 12. Ms. Bibart testified they had been arguing, and appellant "grabbed me by my arms and I told him to let go and he wouldn't and then I finally just pushed him and just kept hitting him and then he finally let go and then I went back out to look for the dog." T. at 14. Ms. Bibart testified she did not tell the police that appellant had choked her or that she had felt threatened. T. at 17. When Ms. Bibart went to a nearby apartment to call the police, she had a knife in her hand which she had "picked up from outside that was on the grill." T. at 15. *Page 5 
 {¶ 18} At the time of trial, Ms. Bibart was eight month pregnant with appellant's child. T. at 11-12. She testified she was still in a relationship with appellant and she wanted it to continue. T. at 17.
 {¶ 19} Next to testify was Robin Eismon. Ms. Eismon was the person Ms. Bibart went to to call the police. Ms Eismon overheard the argument between appellant and Ms. Bibart, and called the police prior to Ms. Bibart coming over. T. at 35. Before calling the police, Ms. Eismon heard arguing for ten to fifteen minutes and observed the following:
 {¶ 20} "A. When I looked out my window I seen Shawn, Marshall whatever he goes by he had Nikki up against the living room door by the throat.
 {¶ 21} "Q. You saw him choking her?
 {¶ 22} "A. Yes.***I seen Nikki swinging her arms, telling him you know f-i-n-g let me go. They spatted, squirreled for a minute. Nikki I heard outside, I opened the door, Marshall threw the TV out the sliding glass door. I opened the door and asked Nikki if she was O.K. because she is pregnant. She said no. She asked me if I had a phone, I said yes, she asked me if she could use it to call the police. I said yes. He come up to her because she was standing in front of my door. She was on the phone with the police. He come up he said go head stab me again bitch. I didn't see Nikki stab her (sic). I didn't even know Nikki had a knife until he said that. When he said that yea, Nikki did have a knife." T. at 36.
 {¶ 23} During the cross-examination of one of the responding officers, Newark Police Officer Joseph Phillips, appellant elicited testimony regarding Ms. Bibart's statements to police. Officer Phillips testified, "Ms. Bibart stated that you had choked *Page 6 
her." T. at 60. On re-direct, Officer Phillips testified Ms. Bibart stated appellant "was choking her and she advised that she began to struggle with him to try and get away. She advised she wasn't able to do so, so she grabbed the nearest item which happened to be the knife and stabbed him with it." T. at 62. Officer Phillips stated, "The only other thing that she mentioned was that she felt that he was trying to not allow her to leave or possibly make her pass out so that she could not leave." T. at 63.
 {¶ 24} Upon review, we find the cited evidence to be sufficient to overcome appellant's "motion to dismiss."
 {¶ 25} Assignment of Error I is denied.
 II {¶ 26} Appellant claims his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 27} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 28} Apart from the evidence described in Assignment of Error I, appellant presented the testimony of Ms. Bibart's caseworker through the Licking County Board of Mental Retardation and Development for Disabilities, Sylvia Murrey. Ms. Murrey *Page 7 
testified Ms. Bibart told her, "she was a victim of domestic violence***you and her had gotten into a fight and she had gotten hurt***you had put hands on her yes." T. at 66.
 {¶ 29} Appellant testified and stated he and Ms. Bibart engaged in a verbal confrontation, nothing more. T. at 71-73. Appellant explained that while he did put his hands on her, "at the time I put my hands on her she was not being hurt in any kind of way, so that does not define an act of violence by me putting my hands on her." T. at 78.
 {¶ 30} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v.Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990),498 U.S. 881. The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis v. Flickinger,77 Ohio St.3d 415, 418, 1997-Ohio-260.
 {¶ 31} Upon review of the record, we find sufficient credible evidence to support the conviction for domestic violence, and no manifest miscarriage of justice.
 {¶ 32} Assignment of Error II is denied. *Page 8 
 {¶ 33} The judgment of the Municipal Court of Licking County, Ohio is hereby affirmed.
Farmer, P.J. Gwin, J. and Wise, J. concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Licking County, Ohio is affirmed. Costs to appellant. *Page 1